Evans v. Kittrell.

---

# EVANS *vs.* KITTRELL.

[BILL IN EQUITY FOR SPECIFIC PERFORMANCE OF CONTRACT.]

1. *Validity of contract governed by what law.*—In the absence of stipulations to the contrary, the validity and construction of contracts are to be determined by the law of the place where they were made; and the mere fact that a contract, invalid by the law of the place where it was entered into, may be valid in a foreign jurisdiction, is not sufficient to show that the parties contemplated its performance in that foreign jurisdiction.

2. *Validity of contract respecting emancipation of slaves.*—A contract, made in this State, and containing nothing to show that the parties contemplated its performance elsewhere, by which the purchaser of a slave binds himself to emancipate the slave whenever he shall have been reimbursed for the amount of the purchase-money by the proceeds of the slave's labor, is void. (Overruling *Prater's Adm'r v. Darby,* 24 Ala. 496.)

3. *Void contract not enforced.*—Equity will not enforce the specific performance of a contract which is contrary to public policy and void.

APPEAL from the Chancery Court of Greene.
Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed by Pleasant W. Kittrell, against Stith Evans, to enforce the specific performance of a contract which was, in substance, as follows: On the 15th December, 1848, complainant, being then a citizen of Alabama, and about to remove to Texas, sold and delivered to the defendant, at the price of $1250, a negro man slave, named Carney, who was a blacksmith by trade; executed to him an absolute bill of sale, and took from him, at the same time, a writing which contained the stipulations to be performed by him, and which was in these words:

"This will certify, that I have this day bought of Dr. P. W. Kittrell his negro man Carney, a blacksmith by trade, for the sum of $1250. Now, for the protection of said boy Carney, and in order to carry out the contract formerly existing between Dr. Kittrell, his former owner, and said boy, respecting his obtaining freedom, I do hereby obligate and bind myself to the said boy, and to the said Kittrell, as soon as the said boy may, by himself or his next friend, refund to me the said sum of $1250, with ten per cent. interest thereon until paid, then, and in that case, I will release said boy from slavery; and I further agree, that in the event of my death before the said Kittrell, then, and in that case, the said boy shall revert to the said Kittrell, on condition that he shall pay over to my legal representatives the above named sum of money, or any part that may remain unpaid at the time of my death. It is also understood and agreed, that after deducting all necessary and proper charges against said boy, I am to allow him the proceeds of his labor in the shop, to go to his credit on the above sum. December 16, 1848. STITH EVANS."

The bill alleged, that the proceeds of the slave's labor had more than repaid to the defendant the amount of the purchase-money, with the stipulated interest thereon; and that he still held and controlled the boy as a slave, and refused to allow him his freedom; and prayed a specific

performance of the contract, in order that the complainant might "remove the said boy, free from all claim and right of property forever, beyond the limits of the State of Alabama."

The defendant answered the bill; denying that the agreement sought to be enforced was any part of the contract of sale, or that it had any validity or effect whatever; and denying that the proceeds of the slave's labor had reimbursed him for the amount of the purchase-money and interest, with other proper and necessary expenses incurred by him for the slave.

The master having reported, under a reference, that the defendant had been more than repaid, from the proceeds of the slave's labor, for the amount of purchase-money and interest, and other lawful charges, the chancellor, on final hearing, rendered a decree for the complainant, and ordered the defendant, by the first day of September next after the rendition of the decree, (June 25, 1857,) "to remove or cause the slave Carney to be removed to some non-slaveholding State or country, and there emancipate and liberate him."

The chancellor's decree is now assigned as error.

I. W. GARROTT, for the appellant, contended that the agreement sought to be enforced was not shown to be a part of the original contract of sale, and was, therefore, without consideration; that it was invalid, because contrary to public policy and express statutory provisions; and that a court of equity could not compel its specific execution, because (1st) of its invalidity, because (2dly) it could not be specifically executed in the very words agreed on, and because (3dly) the court had no jurisdiction to decree its performance beyond the limits of the State of Alabama. He cited Fitzpatrick v. Featherstone, 3 Ala. 40; Dial v. Hair, 18 Ala. 798; Mauldin, Montague & Co. v. Armistead, 18 Ala. 500; 2 Story's Equity, §§ 741, 770 a; Gervais v. Edwards, 2 Dr. & War. 80; 4 Iredell's Equity, 555; Jordan v. Larkins, 4 Bro. C. C. 477; Harriet v. Yielding, 2 Sch. & Lef. 549; Lyndsay v. Lynch, 2 Sch. & Lef. 1. He further insisted, that the

case of Prater's Adm'r v. Darby, 24 Ala. 496, on which the chancellor mainly rested his decree, was inconsistent with several other decisions of this court, and could not be maintained on principle; and asked that it might be reconsidered and overruled.

W. M. BROOKS, *contra.*—The chancery court will decree the specific performance of a contract for the emancipation of a slave, when such contract is made between parties who are able to contract.—Thompson v. Williams, 1 Bibb, 422; Major v. Winn's Adm'r, 13 B. Monroe, 250; Dunlap v. Archer, 7 Dana, 30; Prater's Adm'r v. Darby, 24 Ala. 496; Atwood's case, 21 Ala. 590. There is nothing in the constitution, laws or policy of this State to forbid the execution of the contract. The appellee's agreement to emancipate the slave can be lawfully performed, either by application to the probate court, or by removing the slave to a non-slaveholding State. A party may lawfully contract for the performance by another of any act which he himself might lawfully do; and since Kittrell might lawfully have emancipated his slave, in either of the modes specified, he might well contract for the performance of the act by another.

STONE, J.—The following rules of law must be regarded as well settled:

1. That in the absence of stipulations to the contrary, contracts, as to their validity and construction, are to be determined by the law of the place where they are entered into.

2. There is a class of contracts, which, by their terms, contemplate their performance within another jurisdiction. These are governed by a different principle.—See Story's Conflict of Laws, §§ 76, 287, 288; 1 Parsons on Contracts, 228; Peake v. Yeldell, 17 Ala. 636; Jones v. Jones, 18 Ala. 248; Mays v. Williams, 27 Ala. 267; Walker v. Chapman, 22 Ala. 116.

The contract which the bill in this case seeks to have performed specifically, contains no term or stipulation which looks beyond the State of Alabama for its perform-

·ance. The contract was made in the State of Alabama, and its validity must depend on the laws of this State, as they existed when the contract was entered into.

At the January term, 1838, this court held that, "under the statute of 1834, slaves cannot be emancipated in this State by will, either absolutely, or upon condition, as such attempt at emancipation would not be a compliance with the legislative direction."—Trotter v. Blocker, 6 Porter, 269. The same rule must exist, and the same reason for that rule, in every attempt to emancipate slaves in this State by private contract. The doctrine asserted in 1838 was steadily adhered to in this court in the cases of Alston v. Coleman, 7 Ala. 795; Harrison v. Harrison, 9 Ala. 470; Carroll v. Brumby, 13 Ala. 105; Welsh v. Welsh, 14 Ala. 76; Pool v. Harrison, 18 Ala. 514.

This is nothing more than another form of the rule, which declares that contracts, made in contravention of a statute, are inoperative and void.—Dial v. Hair, 18 Ala. 798; Hooper v. Edwards, 18 Ala. 280; S. C., 25 Ala. 528; Bumgardner v. Taylor, 28 Ala. 687; Hussey v. Roquemore, 27 Ala. 281; Gunter v. Lecky, 30 Ala. 591; 1 Parsons on Contracts, 326, 381-2.

These authorities, it seems to us, demonstrate the invalidity of the agreement which the bill seeks to enforce.

Our attention has been called to the more recent case of Prater v. Darby, 24 Ala. 496. That case does appear to be in conflict with the principles above asserted. We feel it our duty to overrule the case last cited, so far as it conflicts with our former decisions, cited *supra*. With proper deference, we think the error of the opinion in the case of Prater v. Darby is shown by the decree which the chancellor was constrained to make in this case, to carry into effect the principles there declared. To avoid the imputation of illegality in the contract of Mr. Evans, presented in this record, the chancellor was forced to engraft upon that contract a term, not inserted by the parties, requiring Mr. Evans to carry the slave out of this State, to a place where he could enjoy freedom, and there to emancipate him.

Regarding the contract of Mr. Evans as void, we hold that chancery will not entertain a bill to have it specifically executed. The decree of the chancellor is reversed, and the bill dismissed, at the costs of the appellee, both in the court below, and in this court.